Jeff D. Friedman (173886)   The Honorable James Ware
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARK OKANO, on behalf of himself and all others similarly situated,<br><br>                                        Plaintiff,<br><br>        v.<br><br>TREX COMPANY, INC., a Delaware corporation,<br><br>                                        Defendant. | No. CV 09-01878 JW<br><br>**STIPULATION RE: FILING OF AMENDED COMPLAINT** |

1    Pursuant to Fed. R. Civ. P. 15(a)(2), the undersigned parties stipulate and agree as follows:

2    1.    Mark Okano is the plaintiff in *Okano v. Trex Company, Inc.*, CV 09-01878 JW, a

3    case now pending in this judicial district.  Mr. Okano filed his complaint on January 13, 2009, in

4    the United States District Court for the Western District of Washington.  The case was transferred

5    to this Court on April 14, 2009 by order of the United States District Court for the Western District

6    of Washington.  It currently is pending before Judge Ware of the San Jose division of this Court.

7    2.    The defendant, Trex Company, Inc. ("Trex"), answered Mr. Okano's complaint on

8    February 25, 2009.

9    3.    Pursuant to Fed. R. Civ. P. 15(a)(2), Mr. Okano asked Trex if it would agree to his

10   filing the amended complaint attached hereto as Exhibit A.  Trex has agreed.

11

12   Dated:  June 1, 2009

13                                  HAGENS BERMAN SOBOL SHAPIRO LLP

14

15   By  _____/s    Steve W. Berman_____
                          STEVE W. BERMAN

16
17   Steve W. Berman (*pro hac vice*)
     Robert F. Lopez (*pro hac vice*)
18   HAGENS BERMAN SOBOL SHAPIRO LLP
     1301 Fifth Avenue, Suite 2900
19   Seattle, WA  98101
     Telephone:  (206) 623-7292
20   Facsimile:   (206) 623-0594
     steve@hbsslaw.com
21   robl@hbsslaw.com

22   Jeff D. Friedman (173886)
     715 Hearst Avenue, Suite 202
23   Berkeley, CA 94710
     Telephone: (510) 725-3000
24   Facsimile: (510) 725-3001
     jefff@hbsslaw.com
25

26   *Attorneys for Mark Okano and the prospective class*

27

28

1

2

By _____/s____ Rachel Chatman_____
        Rachel Chatman

3

4

Matthew G. Ball (20881)
Rachel Chatman (206775)
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, CA  94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220
Matthew.Ball@klgates.com
Rachel.Chatman@klgates.com

5

6

7

8

9

10

*Attorneys for Trex Company, Inc.*

11

12

13

14

        I, Jeff D. Friedman, am the ECF User whose ID and password are being used to file this STIPULATION RE: FILING OF AMENDED COMPLAINT.  In compliance with General Order 45, X.B., I hereby attest that Rachel Chatman has concurred in this filing.

15

IT IS SO ORDERED:

16

The Stipulation is found as MOOT. The Plaintiff filed their Amended Complaint as a separate docket entry on June 9, 2009

17

18

Dated: June 12, 2009

_James Ware_____
United States District Judge

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

_____
/s/ Jeff D. Friedman
JEFF D. FRIEDMAN

# Exhibit A

Jeff D. Friedman (173886)                                    The Honorable James Ware
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MARK OKANO, on behalf of himself and all            )   No. CV 09-01878 JW
others similarly situated,                          )
                                                    )   FIRST AMENDED CLASS ACTION
                                        Plaintiff,  )   COMPLAINT FOR VIOLATIONS OF
                                                    )   THE MAGNUSON-MOSS WARRANTY
              v.                                    )   ACT, ARTICLE TWO OF THE
                                                    )   UNIFORM COMMERCIAL CODE,
                                                    )   AND STATE CONSUMER
TREX COMPANY, INC., a Delaware                      )   PROTECTION ACTS
corporation,                                        )
                                                    )
                                       Defendant.   )
                                                    )
                                                    )
                                                    )
                                                    )
                                                    )

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ................................................................................................ 1

II.     JURISDICTION AND VENUE ......................................................................... 2

III.    THE PARTIES .................................................................................................... 2

      A.   The Plaintiffs .......................................................................................... 2

      B.   The Defendant ......................................................................................... 3

IV.     GENERAL ALLEGATIONS ............................................................................ 3

      A.   Plaintiffs' Experiences with Trex's Defective Decking Material ........... 3

      B.   Previous Class-Action Lawsuit ............................................................... 7

      C.   Continuing Problems with Trex Products ............................................... 8

V.      CLASS ACTION ALLEGATIONS ................................................................... 9

VI.     TOLLING AND APPLICATION OF THE DISCOVERY RULE ...................... 12

VII.    CLAIMS FOR RELIEF ..................................................................................... 13

COUNT I  Violation of Magnuson-Moss Warranty Act ........................................... 13

COUNT II  Breach of Warranty and Violations of Article 2 of the Uniform
      Commercial Code ............................................................................................. 15

COUNT III  Violation of Consumer Protection Statutes ........................................... 19

PRAYER FOR RELIEF ............................................................................................. 23

DEMAND FOR JURY ............................................................................................... 24

For their first amended complaint against Trex Company, Inc. ("Trex"), Mark Okano and Sharon Ding, on behalf of themselves and all others similarly situated, allege as follows:

## I.   INTRODUCTION

1.      Like thousands of consumers across the country, plaintiffs purchased material manufactured by Trex to build a deck at their homes.  Trex decking boards are not natural wood products; rather, they are composites made from recycled plastic and wood fibers.  Trex touts its product as being superior to real lumber, and it prices the product accordingly.  But the product has shown itself to be defective.  It degrades, decomposes, rots, cracks, splits, checks, splinters, peels, delaminates, flakes, soaks up moisture, expands, swells, and develops mold and/or mildew and/or black or dark spots or streaking or deep discoloration or shadowing.  Trex knows this, and it has acknowledged that it put defective material on the market.

2.      Yet when consumers such as the plaintiffs complain and ask Trex to make things right, Trex responds by offering to replace the defective material with more Trex material – period.  The company refuses to pay for the costs associated with repairing the deck, including the cost of labor to remove the defective material and to install the replacement boards.  But as Trex well knows, these costs far exceed the cost of the boards themselves, such that Trex's proffered remedy is really no remedy at all.

3.      In refusing to pay these costs, Trex relies on a warranty document that purports to exclude liability for, among other things, such charges.  This is not the first time that Trex has attempted to evade its responsibilities to consumers.  In 2000 another class of purchasers of defective product sued Trex after its members met with Trex's recalcitrance in their efforts to seek adequate remedies.  That case settled with a provision that Trex would pay for replacement labor costs.  But Trex learned no lasting lesson.  Trex is now employing the same hard-nosed and unlawful tactics that led to the previous suit.  In fact, Trex's behavior is especially egregious given that it has acknowledged widespread defects in the product it placed on the market; it is said to have placed $45 million in reserve to deal with future losses stemming from the claims of consumers for replacement materials.

4.     As explained below, Trex cannot lawfully rely on warranty terms purporting to exclude liability for damages such as replacement labor costs.  What is more, in its dealings with the plaintiffs and other consumers, Trex has violated the federal Magnuson-Moss Warranty Act and various state consumer protection laws.  Plaintiffs bring this suit in order to vindicate their own rights and those of consumers nationwide.

## II.     JURISDICTION AND VENUE

5.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, which vests original jurisdiction in the district courts of the United States for any multi-state class action where the aggregate amount in controversy exceeds $5 million and where the citizenship of any member of the class of plaintiffs is different from that of any defendant.  The amount-in-controversy and diverse-citizenship requirements of CAFA are satisfied in this case.  Given that Trex sells its products nationwide, given press reports of widespread issues with defective Trex product, given that Trex is reported to have set aside $45 million to cover customer claims arising from its sales of defective products, and given the damage-multipliers available under various state consumer protection laws, plaintiffs believe, and therefore allege, that the aggregate amount in controversy well-exceeds $5 million.  As to CAFA's diverse-citizenship requirement, plaintiffs are citizens of Washington and California, respectively, while Trex has its principal place of business in Virginia, such that Trex is considered a citizen of that state.

6.     Trex, a corporation, transacts business in this judicial district and is otherwise subject to personal jurisdiction in this judicial district.  Accordingly, venue is appropriate in this Court per the terms of 28 U.S.C. § 1391(b) and (c).

## III.     THE PARTIES

**A.     The Plaintiffs**

7.     Plaintiff Mark Okano is a married man living in Gig Harbor, Washington.  He is employed as a federal probation officer for the United States District Court for the Western District of Washington.  The Trex decking material referenced below was installed at his Gig Harbor home.  That material has shown itself to be defective, as set forth in greater detail below, such that Mr.

Okano and his family cannot enjoy their deck.  Mr. Okano has been injured by Trex's breach of warranty with respect to these defective goods and by Trex's refusal to provide adequate redress in response to his warranty claim.

8.      Plaintiff Sharon Ding is a resident of Altadena. California.  She purchased her Trex decking material from a Home Depot in 2006.  Towards the end of 2008, she began to notice that defects were manifesting in the decking material.  Her story is set forth in greater detail below.

**B.      The Defendant**

9.      The defendant, Trex, is a Delaware corporation with its principal place of business in Winchester, Virginia.  It describes itself as the nation's largest manufacturer of "wood-alternative" decking, railing, and fencing products.  Trex is a spinoff of ExxonMobil Oil Corporation (which was known as Mobil Oil Corporation as of the time of the spinoff).

## IV.      GENERAL ALLEGATIONS

**A.      Plaintiffs' Experiences with Trex's Defective Decking Material**

10.      Trex heavily advertises its decking products directly to consumers, including by way of advertisements and its Internet web site.  Currently, for example, Trex states that the plastic in its materials "shields the wood from moisture and insect damage, preventing rotting and splintering."  It underscores the supposedly splinter-free nature of its product by advertising it as safe for bare feet.  It states that "[t]he maintenance problems that come with wood decks don't come with Trex."  It claims that its decking material "will not rot or deteriorate due to harsh weather or insects."  It represents that "Trex resists damage from moisture and sunlight, making it the natural choice for pools, hot tubs and spas."  And it claims that its decking and railing products "require only periodic cleaning to stay beautiful for years to come – no need for sanding, staining or painting, ever."  What is more, its written warranty documents put forth the claims that for 25 years its decking material "shall not check, split, splinter, rot or suffer structural damage from termites or fungal decay."  The essence of its marketing strategy is to tout its composite materials as superior to real wood products – as the best material available for decking.  In tandem with this marketing strategy, Trex charges prices for its supposedly premium products that are well in excess of those charged for lumber materials.

11.     Plaintiff Okano's experience with Trex typifies the experiences of other named plaintiffs and prospective class members.   In June 2005, having been convinced by Trex marketing that Trex decking material not only was suitable for his planned new deck but actually superior to real lumber, Mr. Okano directed his contractor to purchase a quantity of Trex decking boards for installation at his home.  Before directing his contractor to make the purchase, however, Mr. Okano visited a local building supplier, Grey Lumber in Tacoma, Washington, that carried an assortment of decking materials, including the product made by Trex.  Though Mr. Okano indicated interest in the Trex product, he was not given nor shown a copy of any Trex warranty document, nor did the supplier discuss any warranty terms with him.  He did, however, receive pamphlets touting the superiority of Trex decking material.  And when Mr. Okano's contractor purchased the material on Mr. Okano's behalf at the location that Mr. Okano had visited, the contractor also was not given nor shown a copy of any Trex warranty document, nor did the supplier discuss any warranty terms with him.  Indeed, Mr. Okano has no recollection of having received any sort of Trex warranty document, or being advised of any Trex warranty terms, either personally or via his contractor, before, at, or around the time of purchase.

12.     The cost of Mr. Okano's deck, including the Trex materials and labor, was $9,500.  Not long after the installation of the decking material at Mr. Okano's home, the material began to show serious defects.  Specifically, after approximately two years from the time the deck was installed, several decking boards began to rot, expand, and degrade.  These defects rendered the deck, which is elevated some 8-10 feet above ground level, not only unsightly but also unsafe.  In or about July or August 2008, Mr. Okano contacted his contractor and building supplier to report the problems that had developed.  They responded by giving him the contact number for Trex's claims department.

13.     When Mr. Okano contacted the Trex claims department and advised of the problems with the decking boards in or about August 2008, the agent responded by advising that he would send claims materials for Mr. Okano to complete.

14.     Next, Trex sent a letter to Mr. Okano that was dated August 14, 2008.  The letter indicated that in response to Mr. Okano's recent inquiry with the Customer Relations Department,

Trex was enclosing a "Trex Company Concern Form and Limited Warranty for [his] review."  The letter asked that the form be completed and that the form and requested materials, including proof-of-purchase documentation, verification of ownership of the real property where the deck was installed, and photographs, be returned to Trex for processing and review.

15.     The referenced Limited Warranty sent to Mr. Okano with Trex's August 14, 2008 letter is more fully entitled "Trex 25 Year Limited Warranty."  This was the first time that Mr. Okano had ever seen this document or its terms.  The document provides that Trex

> warrants to the original consumer purchaser . . . for a period of twenty-five (25) years from the date of original consumer purchase, under normal residential use and service conditions, [that] Trex products shall be free from material defects in workmanship and materials, and shall not check, split, splinter, rot or suffer structural damage from termites or fungal decay.  If a defect occurs within the warranty period, Purchaser shall notify Trex in writing and, upon confirmation by an authorized Trex representative of the defect, Trex's sole responsibility shall be, at its option, to either replace the defective item or refund the portion of the purchase priced paid by Purchaser for such defective item (not including the cost of its initial installation).

The document also provides that the "warranty shall not cover and Trex shall not be responsible for costs and expenses incurred with respect to the removal of defective Trex products or the installation of replacement materials, including but not limited to labor and freight."  The foregoing purported limitations and exclusions do not appear in bolded, larger, or different-colored type.

16.     In addition, the document contains the following language in capitalized (though not bolded, oversize, or different-colored) type:

> EXCEPT AS SET FORTH ABOVE, THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO TREX PRODUCTS.  TREX EXPRESSLY EXCLUDES AND DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY AND ANY WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, APPLICATION OR USE. UNDER NO CIRCUMSTANCES WILL TREX BE LIABLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, WHETHER SUCH DAMAGES ARE SOUGHT IN CONTRACT, IN TORT (INCLUDING BUT NOT LIMITED TO NEGLIGENCE AND STRICT LIABILITY) OR OTHERWISE, AND TREX'S LIABILITY WITH RESPECT TO DEFECTIVE PRODUCTS SHALL IN NO EVENT EXCEED THE REPLACEMENT OF SUCH PRODUCTS OR REFUND OF THE PURCHASE PRICE, AS DESCRIBED ABOVE.

1   It bears repeating that this was the first time that Mr. Okano had ever seen such language

2   supposedly associated with his purchase of Trex decking material.

3          17.     Mr. Okano completed the form as requested.  Under the heading "Description of

4   Concern," Mr. Okano wrote:  "Deterioration, flaking, erosion of decking boards – strength and

5   integrity of boards is compromised, weakened and unsafe."  He also compiled the materials

6   requested by Trex.  In addition, he procured a letter from his contractor dated September 2, 2008,

7   in which the contractor advised that in August 2008 he had inspected the deck and "noticed that

8   deck materials were starting to decompose in center of deck runs and around butt joints."  The

9   contractor concluded by asking that a Trex representative be sent to "look at [the] problem so we

10  can find a solution to repair said deficiencies and make it safe for family to use this deck."  On or

11  about September 11, 2008, Mr. Okano signed the form and returned it with the supporting

12  materials, including his contractor's letter, to Trex.

13         18.     Though Trex's August 14, 2008 letter had asked that Mr. Okano allow "two to four

14  weeks for processing and review of [his] documentation," Trex responded more than six weeks

15  after Mr. Okano submitted the requested items.  In its October 30, 2008 letter, Trex expressed its

16  "commitment to resolve the identified conditions" by offering to ship "replacement materials for

17  the affected boards on [Mr. Okano's] deck."  More specifically, the company indicated that it

18  would ship to his residence at no cost "113" boards measuring "5/4x6x16" each.  But that was all

19  that Trex offered to do.  No offer was made to pay for the costs associated with repairing the deck,

20  including the costs for the labor necessary to remove and replace the defective boards.

21         19.     In return for its offer to provide the replacement materials, the company asked for a

22  release from any "further liabilities, losses, or claims relating to the affected Trex material and/or

23  its replacement."  It also asked for Mr. Okano's agreement that he would keep the "settlement"

24  confidential and "refrain from making any negative or disparaging remarks to any third party

25  regarding Trex or the quality of its products."

26         20.     Mr. Okano did not accept Trex's unfair and inadequate offer, nor did he agree to

27  Trex's unfair requests.  To this day, as a result of Trex's acts and omissions, Mr. Okano and his

28  family cannot enjoy their deck because it was constructed with supposedly premium materials that

1    turned out to be seriously defective.  Indeed, Mr. Okano recently has noticed dark or black

2    discoloration and visible shading on areas of his deck, and the deterioration, flaking, and swelling

3    originally reported has worsened and begun to develop in new places since the filing of the initial

4    Complaint in this matter.  Upon information and belief, it will cost thousands of dollars in labor

5    and supplies (above and beyond replacement boards)  to repair Mr. Okano's deck, together with

6    costs attendant to disposing of the defective material.  Mr. Okano has been damaged by Trex's

7    breach of warranty and by its refusal, in an unfair claims process, to provide him with lawful and

8    adequate redress for his claim.

9            21.    Others have similar stories to tell.  For example, plaintiff Ding, having been

10   impressed by Trex's marketing claims, purchased her decking material in 2006 and a contractor

11   installed it for her thereafter.  In late 2008 flaking, bubbling, deterioration, and mold and/or black

12   marks or black shadows began to manifest in the product.  She filed a claim with Trex; Trex

13   dispatched an inspector; and, thereafter, Trex offered to replace all of the boards in her deck with

14   new Trex material.  When Ms. Ding asked Trex to cover the cost of labor for removal and

15   replacement of the boards, Trex refused.  Ms. Ding, in turn, refused to accept Trex's unfair offer.

16   Accordingly, to date, Ms. Ding is stuck with a defective deck whose condition continues to worsen.

17   The last cost estimate for labor to replace the boards which thus far have manifested defects was

18   some $3,200.00, in addition to costs attendant to disposing of the defective material.

19   **B.    Previous Class-Action Lawsuit**

20           22.    As referenced above, consumers commenced a previous and similar nationwide

21   class-action lawsuit relating to defective Trex products sometime in 2000.  In that lawsuit,

22   *Kanefsky v. Trex Company, Inc.*, plaintiffs sued Trex and two related entities in the Superior Court

23   of New Jersey, alleging that defendants had violated state and common law by negligently

24   misrepresenting the characteristics of Trex, Timbrex, or Rivenite Products; had breached contracts;

25   had breached implied or expressed warranties; and had defrauded consumers between January 1,

26   1992 and July 31, 2004 ("*Kanefsky* class period").

27           23.    In May 2004, the court certified settlement classes consisting of persons who

28   purchased the referenced products during the *Kanefsky* class period and "all persons who

subsequently own such products."  According to a June 2, 2004 press release from the law firm representing the plaintiffs in the New Jersey class action, the plaintiffs claimed that the warranty issued by Trex (and ExxonMobil) was unconscionable and called for reformation.  The court certified a nationwide settlement class on this issue.

24.      According to that same press release, the court also certified a settlement class of New Jersey consumers on claims that the sale, marketing and distribution of allegedly defective Trex lumber products (and its predecessor product Timbrex) violated the New Jersey Consumer Fraud Act ("NJCFA") and breached express and implied warranties.  The New Jersey plaintiffs sought treble damages pursuant to the NJCFA.

25.      The New Jersey court approved a settlement among the parties on or about December 17, 2004.  As part of the settlement, the defendants agreed to reform the Trex product warranty to remove a disclaimer of implied warranties.  (Yet, as can be seen above, Trex continues to adhere to a warranty document that contains purported disclaimers of the implied warranties of merchantability and fitness for a particular purpose.)  Among the other relief to which Trex agreed was that, upon proper proof of claim, it would "provide for the cost of the replacement of any Product (including labor costs) that is replaced under the terms set forth above [which terms detail the characteristics of certain defects]."  (Notice of Class Action Determination, Class Description, Pendency of Proposed Settlement, and Hearing on Settlement, Superior Court of New Jersey, Law Division, Essex County, No. L-7347-00.)

**C.      Continuing Problems with Trex Products**

26.      According to a November 26, 2007 article in the *Washington Post*, Trex reported in early November 2007 that "a small portion of its products manufactured at its Fernley, NV, plant from 2003 to 2006 were [sic] beginning to peel two to three years after being installed.  The company set aside $45 million in reserves to cover future losses from customers who might seek replacements."  (It should be noted that plaintiffs are without sufficient knowledge to allege that the defective product about which they complain was all manufactured at Trex's Fernley, NV, plant from 2003 to 2006, and they do not do so.)

27.     The article goes on to report that growth in the composite decking materials business has been "gradual, if steady.  Composite decking materials captured 17 percent of the $3.3 billion market for decking products in 2006, up from 5 percent a decade ago."  "Trex, the pioneer, remains a dominant force in the segment."

28.     But in spite of Trex's success in the marketplace, numerous complaints about Trex decking material and Trex's response to complaints can be found online.  In one forum posting a consumer experiencing problems with his or her Trex deck suggests that installer error may have led to some of the issues with the poster's decking, but he or she also points to deteriorating Trex boards.  The customer reports complaining to Trex, which agreed to replace four boards but not to pay for labor.  He or she also was asked to sign a release.

29.     The first response to this post states:  "You have just become a member of a very large club.  Do a search on this site for more engaged [sic] t=junk customers."  Another poster remarks that now, "besides the cracked, deteriorated decking you can look forward to black mold forming all over the shaded areas."

30.     Still another poster claims that problems with Trex decking develop because of the "cooling down process" used in manufacturing.

33.     Also, as alleged herein and as otherwise reported, certain buyers of Trex products are experiencing extensive and serious mold and/or mildew and/or discoloration and/or dark spotting or streaking or shadowing of their product.  It is unknown at present whether these particular defects are actually surface mold or mildew, or whether they are expressions of glue or binder or some other product constituent or constituents that is or are seeping up through the product, or all of the above.

## V.     CLASS ACTION ALLEGATIONS

34.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, specifically Rules 23(b)(2) and 23(b)(3), on behalf of the following Class (the "Class"):

> All consumers in the United States who, at any time from August 1, 2004, through the date of entry of judgment, themselves or via an agent, purchased any Trex decking material for any consumer or household use, or who were transferred ownership of the decking material or any structures containing it, where such decking material,

or any part thereof, has exhibited defects, including but not limited to, degradation, delamination, peeling, rot, splintering, checks, cracks, decomposition, flaking, disintegration, bowing, expanding, swelling, a failure to resist moisture, and/or molding or mildewing or other dark spotting, discoloration, streaking, or shadowing, and where Trex has not paid, or has not agreed to pay, all costs and expenses associated with removing and disposing of the defective material and replacing it with non-defective material, including any shipping or delivery costs, the cost of labor to remove the defective material and to install replacement material, and the cost of disposal of the defective material.  Also included in the class are all consumers in the United States who, at any time from August 1, 2004, through the date of entry of judgment, themselves or via an agent, purchased any Trex decking material for any consumer or household use, or who were transferred ownership of the decking material or any structures containing it, and who at any time were provided a Trex warranty document purporting to limit Trex's liability for defective decking material to replacement of the defective material or a refund for the purchase price of the defective material, at its election.  Excluded from the Class are officers, representatives, or agents of Trex.

35.     Upon information and belief, there are thousands of members in the above-described Class.  The exact number and identities of fellow members, however, are presently unknown to plaintiffs, but they are known to Trex and ascertainable via appropriate discovery.

36.     Among the questions of law and fact common to the Class are:

a.     Are the Trex decking materials at issue in this lawsuit defective?

b.     Is the mix of materials, or any material, used to make Trex decking materials a cause of the defects alleged?

c.     Is the manufacturing process a cause of the defects alleged?

d.     When did Trex realize that the decking products it was placing on the market were defective?

e.     Are the purported exclusions of liability in Trex warranty documents for consequential and incidental damages, and, more particularly, for removal and installation labor and freight charges, conspicuous?

f.     In Trex warranty documents, is the purported limitation of liability to replacement of defective material, or a refund for the purchase price, conspicuous?

g.     Are Trex's purported disclaimers of the implied warranties of merchantability and fitness for a particular purpose valid?

1                h.       Did Trex make, or have a program for making, written warranties readily

2   available for examination by prospective buyers of its products?

3                i.      With respect to Trex warranty documents, are Trex's purported exclusions

4   of liability for consequential and incidental damages, including for freight charges and labor costs,

5   conscionable, valid, and enforceable?

6                j.      Were the defects in the Trex decking materials latent?

7                k.     Have the limited remedies that Trex purports to offer failed of their essential

8   purpose?

9                l.      Does Trex have a program in place to discourage consumers who bought

10   defective Trex product from seeking all remedies lawfully available to them?

11              m.    Is part of Trex's strategy to discourage consumers from seeking full redress

12   the dissemination of warranty documents that purport to disclaim implied warranties, in violation

13   of its pledge in the New Jersey settlement agreement, duly entered by the New Jersey court, to

14   strike those disclaimers from its written warranties?

15              n.     Is part of Trex's strategy to discourage consumers from seeking full redress

16   the inclusion in its warranty documents of purported exclusions of liability for consequential and

17   incidental damages, including for freight charges and labor costs, even though Trex knows that

18   such purported exclusions are unconscionable, invalid, and not enforceable under the

19   circumstances of the consumer transactions at issue?

20              o.     Has Trex placed products on the market with the knowledge that they were

21   defective, or likely to be defective?

22              p.     Has Trex advertised its products as having characteristics that they do not

23   have?

24              q.     Has Trex acted deceptively or unfairly or unconscionably in the marketing

25   of its products?

26              r.     Has Trex acted deceptively or unfairly or unconscionably in addressing the

27   complaints of consumers who purchased or acquired defective Trex decking materials?

28              s.     Are Trex's warranty documents subject to reformation?

1     37.     Plaintiffs' claims are typical of the Class because plaintiffs and all members of the
2    Class were injured in the same manner by Trex's violations of provisions of the Magnuson-Moss
3    Warranty Act; by its violations of provisions of Article 2 of the Uniform Commercial Code, as
4    enacted in the various states, and related principles; and by its unfair or deceptive or
5    unconscionable acts and practices as defined by the consumer protection laws of the various states.

6     38.     Plaintiffs will protect fully and adequately the interests of all members of the Class.
7    Plaintiffs have retained counsel who are experienced in consumer class-action litigation.  Plaintiffs
8    have no interests which are adverse to, or in conflict with, other members of the Class.

9     39.     The questions of law and fact common to the members of the Class predominate
10   over any questions which may affect only individual members.

11     40.     A class action is superior to other available methods for the fair and efficient
12   adjudication of this controversy.  The Class is readily definable, and prosecution as a class action
13   will eliminate the possibility of duplicative litigation, while also providing redress for claims which
14   otherwise would be too small to support the expense of individual litigation.

15     41.     Furthermore, Trex has acted or refused to act, as alleged herein, on grounds
16   generally applicable to the Class, thereby making appropriate final injunctive relief or
17   corresponding declaratory relief with respect to the Class as a whole.

18      **VI.    TOLLING AND APPLICATION OF THE DISCOVERY RULE**

19     42.     The defects complained of were latent and not detectable until manifestation, even
20   upon reasonable inspection and all due diligence; therefore, plaintiffs and the members of the
21   putative Class were not able to discover these defects until after purchase and installation of Trex's
22   product.

23     43.     Trex knew of the defects complained of prior to the time of sale, and it concealed
24   this critical information from the plaintiffs and all Class members and consumers.  All applicable
25   statutes of limitation have, therefore, been tolled by Trex's concealment of material facts.

26     44.     Trex is estopped from relying upon any otherwise applicable statutes of limitation
27   because of its concealment of the defects of which plaintiffs complain.

28

45.     Furthermore, and in the alternative, given that the defects complained of did not manifest themselves until after purchase and installation, the discovery rule applies where available to the application of applicable statutes of limitation.

## VII.     CLAIMS FOR RELIEF

### COUNT I

### Violation of Magnuson-Moss Warranty Act

46.     Plaintiffs restate the preceding paragraphs and incorporate them here by this reference.

47.     The federal Magnuson-Moss Warranty Act ("Magnuson-Moss"), 15 U.S.C. §§ 2301-2312, is a consumer protection regime designed to supplement state warranty law.

48.     Magnuson-Moss provides a cause of action for breach of warranty.  15 U.S.C. § 2310(d)(1).  Trex has breached its warranty to provide goods that are free from defects, and plaintiffs have suffered damages as a result of Trex's breach.

49.      Trex's written warranties contain terms purportedly limiting its liability relative to defective products to replacement of the product or refund for the purchase price of the product, at Trex's option.  These terms appear in the same font and type-size as the rest of the terms of the warranty, they are not bolded, and they are not printed in a contrasting color.  In short, they are inconspicuous, and that lack of conspicuousness violates Magnuson-Moss.  15 U.S.C. § 2302(a); 15 U.S.C. § 2304(a)(3).  In that these terms effectively purport to exclude liability for consequential damages, they fail to meet "the Federal minimum standards for warranty, and, accordingly, they are not enforceable.  *See* 15 U.S.C. § 2304(a)(3).

50.     In addition, Trex's written warranties purport explicitly to exclude liability for consequential and incidental damages, including for the costs of shipping and labor.  These terms appear in the same font and type-size as the rest of the terms of the warranty, they are not bolded, and they are not printed in a contrasting color.  In short, they are inconspicuous, and that lack of conspicuousness violates Magnuson-Moss.  Where these terms purport to exclude liability for consequential damages, they fail to meet "the Federal minimum standards for warranty, and, accordingly, they are not enforceable.  *See* 15 U.S.C. § 2304(a)(3).

51.     Trex's written warranties also contain purported disclaimers of the implied warranties of merchantability and fitness for a particular purpose.  These disclaimers are ineffective pursuant to 15 U.S.C. § 2308(a) and (c).

52.     In addition, neither plaintiff Okano nor his contractor, his agent for purposes of purchasing the Trex decking material at issue, recalls receiving a written warranty document before, at, or around the time that the material was purchased.  Mr. Okano also does not recall having seen any copies of the warranty documents displayed at the supply house where the decking material was purchased.  This is typical of the experience of other plaintiffs and Class members. Trex's failure to assure that its written warranties be made readily available for examination by prospective buyers violates Magnuson-Moss.  16 C.F.R. § 702.3.

53.     Finally, at the time this purported warranty was issued, Trex knew that it had not fixed the process of manufacturing that led to the defective boards that were the subject of the earlier class action – thus, the disclaimers were unconscionable because they disclaimed a defect known but not disclosed.

54.     Trex's acts and omissions in violation of Magnuson-Moss are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and, accordingly, they are unlawful.  15 U.S.C. § 2310(b); 15 U.S.C. § 45(a)(1).

55.     Plaintiffs and the Class members they seek to represent have suffered damages as a result of Trex's breach of warranty and its failures to comply with its lawful obligations under its written and implied warranties, in particular by way of Trex's refusal to pay for labor costs associated with removal of the defective Trex decking material and re-installation of the replacement decking material and any supplies needed to remove the defective material and to re-install the replacement material.  Class members also have suffered recoverable damages where, in purported reliance on exclusionary language in its written warranty documents, Trex has refused to pay shipping charges for replacement product.

56.     Magnuson-Moss provides for "other legal and equitable" relief where there has been a breach of warranty or failure to abide by the obligations that Magnuson-Moss imposes.  15 U.S.C. § 2310(d)(1).  Plaintiffs and the Class they seek to represent ask for a reformation of Trex's

1   warranty documents to comport with Trex's obligations under Magnuson-Moss.  In addition, they

2   ask that Trex be enjoined from acting unlawfully as alleged herein, including with respect to its

3   practices aimed at discouraging consumers who purchased defective Trex product from seeking the

4   full panoply of remedies available to them.

5          57.    Magnuson-Moss also provides for an award of costs and expenses, including

6   attorneys' fees, to prevailing consumers in connection with the commencement and prosecution of

7   lawsuits thereunder, unless the Court in its discretion determines that such an award would be

8   inappropriate.  15 U.S.C. § 2310(d)(2).  Plaintiffs and the prospective Class intend to seek such an

9   award as prevailing consumers at the conclusion of this lawsuit.

## COUNT II

### Breach of Warranty and Violations of Article 2 of the Uniform Commercial Code

12         58.    Plaintiffs restate the preceding paragraphs and incorporate them here by this

13   reference.

14         59.    Where adopted, Article 2 of the Uniform Commercial Code (sometimes "U.C.C.")

15   governs transactions in goods and warranty rights and obligations.

16         60.    Trex extends a written warranty directly to consumers.  It warrants that for a period

17   of 25 years, "Trex products shall be free from material defects in workmanship and materials, and

18   shall not check, split, splinter, rot or suffer structural damage from termites or fungal decay."  In

19   fact, however, the Trex products purchased by the plaintiffs were not free from defects, and they

20   have exhibited checking, splitting, splintering, rot, and structural damage, among other defects.

21         61.    In addition, at the time this purported warranty was issued, Trex knew that it had not

22   fixed the process of manufacturing that led to the defective boards subject of the earlier class

23   action – thus, the disclaimers were unconscionable because they purported to disclaim a defect

24   known but not disclosed.

25         62.    In the written warranty document it sent to plaintiff Okano and others after they

26   advised of the defects in their decking material, Trex purports to exclude liability for consequential

27   and incidental damages a) generically, by way of references to "special, incidental or consequential

28   damages"; b) specifically, by way of references to removal and installation labor costs and freight

1    charge; and c) implicitly, by purporting to provide only for replacement or refund, at its option,

2    relative to defective goods.

3         63.    These purported exclusions or limitations of liability were never negotiated between

4    Trex, a powerful corporation with immense bargaining power on the one hand, and on the other,

5    the plaintiff consumers.  For example, plaintiff Okano never even saw these purported exclusions

6    and limitations – which are not conspicuous in the warranty document in any event – until *after* he

7    sought redress relative to the defective product he purchased some three years prior.

8         64.    Under these circumstances, Trex's purported exclusions or limitations of liability

9    are unconscionable and invalid.  *E.g.*, RCW 62A.2-302(1); RCW 62A.2-719(3).

10        65.    What is more, the defects in the Trex material sold to plaintiffs were latent and non-

11   discoverable by reasonable inspection at the time plaintiffs purchased the goods.  Furthermore,

12   decking materials are intended to be installed in structures; when these materials fail, any materials

13   meant to replace defective boards must be transported to the place of the structure and labor is

14   necessary to remove the defective material, to dispose of it, and to replace it with replacement

15   material.

16        66.    Under these circumstances, a purported limitation or exclusion of the partial but

17   necessary remedies of payment or reimbursement for shipping charges and the cost of removal and

18   replacement labor causes the purportedly limited remedy set forth in Trex's warranty document to

19   fail of its essential purpose.

20        67.    Furthermore, Trex's purported disclaimers of the implied warranties of

21   merchantability and fitness for a particular purpose are not valid in that they are inconspicuous and

22   fail to set forth with particularity the qualities and characteristics of the decking material which are

23   not being warranted.  *E.g.*, RCW 62A.2-316(2) and (4).

24        68.    Given these facts and circumstances, plaintiffs are entitled to the full panoply of

25   remedies provided under Article 2 of the U.C.C. as adopted by the various states, as well as all

26   other applicable remedies.  *E.g.*, RCW 62A.2-316(1); RCW 62A.2-719(2).  These include

27   replacement of the defective decking material with non-defective material of at least the quality

28   and grade marketed and promised, shipment of replacement material to the plaintiffs' homes, the

cost of labor to remove the defective material, the cost to dispose of the defective material, and the cost of labor and supplies necessary to install the replacement materials – all at Trex's expense.

69. The Uniform Commercial Code, including Article 2 on Sales, was meant to harmonize the law governing commercial transactions across the United States. Every state in the Union has adopted the Uniform Commercial Code, though Louisiana has not adopted Article 2 on Sales.

70. Trex has marketed its decking material nationwide throughout the Class Period. Upon information and belief, Trex has behaved similarly in its dealings with, and has proffered similar warranty documents long after sales have occurred to, consumers across the United States who have complained about defective goods and Trex's breaches of warranty. Accordingly, not only does Washington's Article 2 apply as indicated, but the corresponding provisions of Article 2 of the U.C.C. apply with respect to the claims of putative Class members in the 48 other states (and the District of Columbia) where they have been adopted.

71. Applicable sections of Washington's Article 2 are quoted above. Companion codifications of Article 2 of the U.C.C. are found as follows:

    a. Ala. Code § 7-2-101, *et seq.*

    b. Alaska Stat. § 45.02.101, *et seq.*

    c. Ariz. Rev. Stat. § 47-2101, *et seq.*;

    d. Ark. Code § 4-1-2, *et seq.*;

    e. Cal. Com. Code § 2101, *et seq.*;

    f. Colo. Rev. Stat. § 4-3-101, *et seq.*;

    g. Conn. Gen. Stat. § 42a-2-101, *et seq.*;

    h. 6 Del. Code § 2-101, *et seq.*;

    i. D.C. Code § 28:2-101, *et seq.*;

    j. Fla. Stat. § 672.101, *et seq.*;

    k. Ga. Code § 11-2-101, *et seq.*;

    l. Haw. Rev. Stat. § 490:2-101, *et seq.*;

    m. Idaho Code § 28-2-101, *et seq.*;

| | | |
|---|---|---|
| 1 | n. | 810 Ill. Comp. Stat. § 5/2-101, *et seq.*; |
| 2 | o. | Ind. Code Ann. § 26-1-2-101, *et seq.*; |
| 3 | p. | Iowa Code § 554.2101, *et seq.*; |
| 4 | q. | Kan. Stat. § 84-2-101, *et seq.*; |
| 5 | r. | Ky. Rev. Stat. § 355.02.101, *et seq.*; |
| 6 | s. | Me. Rev. Stat. § 11. 2-101, *et seq.*; |
| 7 | t. | Md. Com. Law Code § 2-101, *et seq.*; |
| 8 | u. | Mass. Gen. Laws 106:2-101, *et seq.*; |
| 9 | v. | Mich. Stat. § 440.2101, *et seq.*; |
| 10 | w. | Minn. Stat. § 336.2-101, *et seq.*; |
| 11 | x. | Miss. Code Ann. § 75-2-101, *et seq.*; |
| 12 | y. | Vernon's Mo. Rev. Stat. § 400.2-101, *et seq.*; |
| 13 | z. | Mont. Code Ann. § 30-2-101, *et seq.*; |
| 14 | aa. | Neb. Rev. Stat. § UCC-2-101, *et seq.*; |
| 15 | bb. | Nev. Rev. Stat. § 104.2101, *et seq.*; |
| 16 | cc. | N.H. Rev. Stat. § 382-A:2-101, *et seq.*; |
| 17 | dd. | N.J. Stat. Ann. § 12A:2-101, *et seq.*; |
| 18 | ee. | N.M. Stat. Ann. § 55-2-101, *et seq.*; |
| 19 | ff. | N.Y. Gen. Bus. Law § UCC-2-101, *et seq.*; |
| 20 | gg. | N.C. Gen. Stat. § 25-2-101, *et seq.*; |
| 21 | hh. | N.D. Cent. Code § 41-02-01, *et seq.*; |
| 22 | ii. | Ohio Rev. Stat. § 1302.01, *et seq.*; |
| 23 | jj. | Okla. Stat. tit. § 12A-2-101, *et seq.*; |
| 24 | kk. | Or. Rev. Stat. § 72.1010, *et seq.*; |
| 25 | ll. | 13 Pa. Consol. Stat. § 2101, *et seq.*; |
| 26 | mm. | R.I. Gen. Laws. § 6A-2-101, *et seq.*; |
| 27 | nn. | S.C. Code Laws § 36-2-101, *et seq.*; |
| 28 | oo. | S.D. Code Laws § 57A-2-101, *et seq.*; |

1    pp. Tenn. Code § 47-2-101, *et seq.*;

2    qq. Tex. Bus. & Com. Code § 2.102, *et seq.*;

3    rr. Utah Code Ann. § 70A-2-101, *et seq.*;

4    ss. Vt. Stat. Ann. tit. 9A, § 2-101, *et seq.*;

5    qq. Va. Code Ann. § 8.2-101, *et seq.*;

6    uu. W. Va. Code § 46-2-101, *et seq.*;

7    vv. Wis. Stat. § 402.101, *et seq.*; and

8    ww. Wyo. Stat. § 34.1-2-101, *et seq.*

9 As to the claims of Louisiana residents, the Civil Code of that state applies.

10             **COUNT III**

11        **Violation of Consumer Protection Statutes**

12    72. Plaintiffs restate the preceding paragraphs and incorporate them here by this

13 reference.

14    73. Trex's conduct and omissions, as alleged in this complaint, constitute unfair or

15 deceptive or unconscionable acts or practices in violation of the consumer protection acts (this term

16 is used broadly) of the various states.  Such behavior is unlawful.  Trex's continuing violations of

17 law include, but are not limited to:

18    a. Placing on the market decking materials that were known to be defective, or

19 that were known as likely to be defective, while representing that those products were free from

20 material defects;

21    b. Marketing, promoting, and advertising its product as having uses,

22 characteristics, or benefits that it did not have, and as being of a certain standard, quality, or grade,

23 when really it was of another;

24    c. Promoting its product as superior to alternatives, including natural lumber

25 alternatives, and charging higher prices for it, while knowing that in fact it was not superior to

26 alternatives such as natural lumber;

27

28

d.      Failing to negotiate disclaimers of warranties and limitations or exclusions of liability and remedies, which were and are unconscionable under the facts and circumstances, and then inserting them into warranty documents anyway;

e.      Sending the warranty documents referenced in the preceding subparagraph d, with the purported disclaimers, limitations, and exclusions, to consumers who reported that their Trex product had exhibited defects, in an effort to induce those consumers to forego rights and remedies rightfully available to them, including the right to be reimbursed for the cost of labor necessary to remove defective Trex decking and install replacement decking;

f.      Failing to make conspicuous in its warranty documents the purported disclaimers, limitations, and exclusions referenced in the preceding subparagraph c;

g.      Failing to make warranty documents available to consumers at or around the time of their purchase of Trex products;

h.      Failing to process consumer complaints in a timely fashion, even after being informed that defects in the product made the decks unsafe into which the product had been incorporated;

i.      Demanding as a condition for agreeing to provide replacement decking a release and non-disparagement promise from consumers who reported defective decking to Trex and sought remedies, even though such releases and promises are not required of a consumer in order to avail himself or herself of such remedies, and without advising the consumer to seek legal counsel before assenting to provide such releases or promises;

j.      Failing to honor its promise made to settle the previous nationwide class action brought against it, wherein the settlement agreement was ordered at its request by the New Jersey court, that it would strike the disclaimers of implied warranties from its warranty documents; and

k.      Systematically discouraging consumers from availing themselves of their lawful rights to seek full redress related to their purchases of defective Trex decking materials, even as Trex acknowledged the enormous scope of the problem.

74.     Trex willfully engaged in such practices knowing them to be unfair or deceptive, or unconscionable, and with the intent that plaintiffs and the prospective Class would act or fail to act in manners designed to advance Trex's commercial interests.

75.     The wrongful conduct alleged in this complaint occurred, and continues to occur, in the ordinary course of Trex's business or occupation and has caused great harm to plaintiffs and the prospective Class, who were foreseeable and direct victims thereof.

76.     Trex has injured the public interest, and Trex's actions continue to pose a threat to the public.

77.     As a direct and legal result of Trex's misleading, deceptive, unfair, false, fraudulent, and unconscionable trade practices, plaintiffs and the prospective Class have sustained damages in amounts to be proven at trial.

78.     As an example of the relief available to plaintiffs, Washington's Consumer Protection Act provides that an injured party may have damages; injunctive relief; treble damages to $10,000; and the costs of suit, including a reasonable attorney's fee.  RCW 19.86.090. Plaintiff Okano seeks all damages lawfully recoverable as they relate to his purchase of defective Trex decking material, to include but not be limited to, the cost of labor to remove the defective material and also to replace it with replacement material, together with any necessary supplies, which cost Trex has refused to pay, with trebling.  He also seeks injunctive relief to enjoin further violations of law.  And he seeks the costs of suit, including a reasonable attorney's fee.

79.     Trex's actions and omissions as described in this complaint also have violated the consumer protection statutes of various other states, where Trex has behaved similarly with regard to consumers who reside in those states.  These actions and omissions, which have included intentional, unconscionable, and repeated deception, false promise, misrepresentation, and/or concealment, suppression, or omission of material fact, among other unconscionable behaviors, including unfair trade practices, have affected the public interest in those various states.  Members of the prospective class seek the full measure of relief available at law and equity (to include or be constituted by injunctive and declaratory relief as available) under the laws of those various states, including actual damages and multiplication of actual damages as allowed by law, or restitution or

disgorgement, and punitive damages where available, together with the cost of suit, including reasonable attorneys' fees.  In this proposed nationwide class action, the state laws under which the prospective Class seeks relief include:

a. Ariz. Rev. Stat. § 44-1522, *et seq.*;

b. Ark. Code § 4-88-101, *et seq.*;

c. Cal. Bus. & Prof. Code §§ 17200 and 17500, *et seq.*;

Cal. Civ. Code § 1750, *et seq.*;

d. Colo. Rev. Stat. § 6-1-101, *et seq.*;

e. Conn. Gen. Stat. § 42-110a, *et seq.*;

f. 6 Del. Code § 2511, *et seq.*;

g. D.C. Code § 28-3901, *et seq.*;

h. Fla. Stat. § 501.201, *et seq.*;

i. O.C.G.A. § 10-1-372, *et seq.*;

j. Haw. Rev. Stat. § 480, *et seq.*;

k. Idaho Code § 48-601, *et seq.*;

l. 815 ILCS § 505/1, *et seq.*;

m. Kan. Stat. § 50-626, *et seq.*;

n. Ky. Rev. Stat. Ann. § 367.110, *et seq.*;

Ky. Rev. Stat. Ann. § 365.020, *et seq.*;

o. 5 Me. Rev. Stat. § 205A, *et seq.*;

Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

p. Md. Com. Law Code § 13-101, *et seq.*;

q. Mass. Ann. Laws ch. 93A, *et seq.*;

r. Mich. Stat. § 445.901, *et seq.*;

s. Minn. Stat. § 325F.68, *et seq.*;

Minn. Stat. § 325D.45, *et seq.*;

t. Vernon's Mo. Rev. Stat. § 407.010, *et seq.*;

u. Neb. Rev. Stat. § 59-1601, *et seq.*;

|   | | Neb. Rev. Stat. § 87-301, *et seq.*; |
|---|---|---|
| | v. | Nev. Rev. Stat. § 598.0903, *et seq.*; |
| | w. | N.C. Gen. Stat. § 75-1.1, *et seq.*; |
| | x. | N.H. Rev. Stat. § 358-A:1, *et seq.*; |
| | y. | N.J. Stat. Ann. § 56:8-1, *et seq.*; |
| | z. | N.M. Stat. Ann. § 57-12-1, *et seq.*; |
| | aa. | N.Y. Gen. Bus. Law § 349, *et seq.*; |
| | bb. | N.D. Cent. Code § 51-15-01, *et seq.*; |
| | cc. | Okla. Stat. tit. 15 § 751, *et seq.*; |
| | dd. | Or. Rev. Stat. § 646.605, *et seq.*; |
| | ee. | R.I. Gen. Laws. § 6-13.1-1, *et seq.*; |
| | ff. | S.C. Code Laws § 39-5-10, *et seq.*; |
| | gg. | S.D. Code Laws § 37-24-1, *et seq.*; |
| | hh. | Tex. Bus. & Com. Code §§ 17.41-17.63; |
| | ii. | Vt. Stat. Ann. tit. 9, § 2451, *et seq.*; |
| | jj. | RCW 19.86.010, *et seq.*; |
| | kk. | West Virginia Code §46A-6-101, *et seq.*; and |
| | ll. | Wis. Stat. § 100.18, *et seq.* |

**PRAYER FOR RELIEF**

WHEREFORE, having stated the foregoing allegations and claims, plaintiffs pray:

A.     That the Court determine that this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to their and the prospective Class's claims for equitable and injunctive relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to their and the prospective Class's claims for damages, and declaring them representatives of the Class and their counsel as counsel for the Class;

B.     That the conduct alleged herein be declared, adjudged, and decreed to be unlawful;

C.     That the Trex warranty documents be re-formed as necessary, or that certain provisions therein be disregarded as invalid or unenforceable, to permit them and the Class the full

1   panoply of remedies available to them for breach of warranty, express and implied, under Article 2

2   of the Uniform Commercial Code (or the applicable provisions of the Civil Code of Louisiana, as

3   appropriate) as adopted in their respective states, or otherwise;

4           D.      That they and the Class be afforded all remedies available to them at law or equity,

5   including but not limited to, awards of damages, restitution, or disgorgement under the consumer

6   protection laws of the various states, as applicable, in such amounts to be determined at trial, with

7   trebling or other multiplying where permitted by law;

8           E.      That they and the Class be granted an award of punitive damages as available at law

9   or equity, and in an amount to be determined at trial;

10          F.      That Trex be enjoined from continuing the illegal activities alleged herein;

11          G.      That they and the Class recover their costs of suit, including reasonable attorneys'

12  fees and expenses as provided by law; and

13          H.      That they and the Class be granted such other, further, and different relief as the

14  nature of the case may require or as may be determined to be just, equitable, and proper by this

15  Court.

16  **DEMAND FOR JURY**

17        Plaintiffs and the prospective Class respectfully demand a jury trial on all issues so triable.

18  DATED:  June 1, 2009.

19                    HAGENS BERMAN SOBOL SHAPIRO LLP

20

21

22                    By _____ s/ Steve W. Berman _____
                        Steve W. Berman (*pro hac vice*)

23                      Robert F. Lopez, (*pro hac vice*)
                      1301 Fifth Avenue, Suite 2900

24                    Seattle, Washington  98101
                      Telephone: (206) 623-7292

25                    Facsimile:   (206) 623-0594

26

27

28

1

2

HAGENS BERMAN SOBOL SHAPIRO LLP

3

4

By _____ s/ Jeff D. Friedman _____

Jeff D. Friedman (173886)

5

715 Hearst Avenue, Suite 202
Berkeley, California  94710

6

Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001

7

8

*Attorneys for Plaintiffs and the Prospective
Class*

9

.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28